UNITED STATES DISTRICT COURT ROBINSON
SOUTHERN DISTRICT OF NEW YORK

(White Plains)

**'08 CIV 6356**

---

STEPHEN DRAGO, Individually and as Acting
Chair and President of "Neighborhoods Against
Cell Towers,"

                             Plaintiffs,

              v.

JOHN S. GARMENT, Chairman, and STEPHEN A.
ALEXANDER, JOHN E. DURANTE,
CASIMIRO V. CIBELLI, ARNOLD
BERNSTEIN, MICHAEL F. QUINN,
and JOHN J. IORIS, as Members of the Planning
Board of the City of White Plains; THE CITY OF
WHITE PLAINS, New York, and METROPCS
NEW YORK, LLC,

                            Defendants.

**COMPLAINT**
(Declaratory Judgment and
Telecommunications Act)

Docket No.



---

### Nature of the Action

1. This is an action

(A) brought pursuant to 28 U.S.C. §2201, for declaratory judgment and

(B) brought pursuant to 47 U.S.C. §332(c)(7)(B)(v) to cancel and enjoin the

Special Permits granted by the Planning Board of the City of White Plains to MetroPCS

New York, LLC to erect and operate wireless cell antennas at 30 Lake Avenue and 90

Bryant Avenue in White Plains, New York, on the grounds that:

a) MetroPCS failed to offer any evidence establishing a public need for
additional antennas in an area already saturated with wireless cell phone service;

b) the Planning Board Defendants violated their responsibility under the City's
Zoning Ordinance to protect public health, safety and welfare by not considering
placement of the proposed antennas at alternate sites at a distance away from
neighborhood schools; and

1

c) the Planning Board Defendants refused and failed to consider to what "extent" the Federal Communications Commission (FCC) regulations prevent them from considering (1) non-thermal biological environmental effects of RF emissions, and (2) long-term cumulative environmental effects of RF emissions.

2. The Telecommunications Act directs that this proceeding be heard and decided by the Court "on an expedited basis."

## Jurisdiction

3. The Court has express statutory jurisdiction to hear and decide this action under 28 U.S.C. §2201 and §1331 and under 47 U.S.C. §332(c)(7)(B)(v), which provides in pertinent part:

(v) Any person adversely affected by any final action or failure to act by a State or local government or any instrumentality thereof that is inconsistent with this subparagraph may, within 30 days after such action or failure to act, commence an action in any court of competent jurisdiction. The court shall hear and decide such action on an expedited basis. * * *

4. On June 17, 2008, the White Plains Planning Board approved the applications of METROPCS for the Special Permits and Site Plans that are the subject of this proceeding. This action has been commenced within 30 days thereof.

## Parties

5. All parties reside in or are found in this District, and all events referred to in this action occurred here. Venue properly lies in this District.

6. Plaintiff STEPHEN DRAGO resides at 30 Lake Avenue in White Plains, New York, one of the buildings on which METROPCS proposes to erect wireless cell antennas. He brings this action individually and as acting Chair and President of "Neighborhoods Against Cell Towers," an unincorporated association of concerned citizens whose members include other persons residing at 30 Lake Street and nearby, directly affected by the proposed METROPCS wireless cell antennas.

7. The CITY OF WHITE PLAINS, a municipality of the State of New York, was incorporated under the Laws of 1922, Chapter 521, Section 1.

8. The Planning Board of the City of White Plains is organized under the Municipal Code of the City Of White Plains, Article II, Section 9-3-16 as authorized by New York State General City Law § 27, General Municipal Law § 234 to approve plats [Municipal Code Sec. 9-3-17]; report proposed changes in the city's zoning ordinance to the Common Council [Sec. 9-3-18]; recommend to the Common Council amendments, extensions, additions and other changes in and to the city's plan as seem desirable to the board [Sec. 9-3-19]; recommend to the Common Council changes in the city's zoning ordinance which the board deems advisable [Ibid.]; and consider plans for public housing and the replanning, rehabilitation, improvement and redevelopment of neighborhoods [Ibid.]

9. The White Plains Planning Board has jurisdiction to grant Special Permits and approve Site Plans for cell antennas under White Plains Zoning Ordinance Section 6 Special Permit "Uses."

Section 6.4.3 of the Zoning Ordinance provides in pertinent part:

The approving agency may authorize issuance of a special permit, provided it finds that the standards of Sections 6.5 and 6.7 have been met.

Section 6.5 of the Zoning Ordinance provides in pertinent part:

All special permit "uses" shall comply with the following standards in addition to the "site plan" standards of Section 7.5. The approving agency shall attach such additional conditions and safeguards to any special permit as are, in its opinion, necessary to insure initial and continual conformance to all applicable standards and requirements. * * * 6.5.3 Operations in connection with any special permit "use" will not be more objectionable to nearby properties by reason of noise, traffic, fumes, vibration or other characteristics than would be the operations of permitted "uses" not requiring a special permit.

10. A Site Plan is a document containing drawings and support materials including building elevations, existing and proposed structures and utilities. The document provides material necessary for the White Plains Building Department and the approving agency, here the White Plains Planning Board, in accordance with the Zoning Ordinance, to review the Site Plan in accordance with White Plains Zoning Ordinance Section 7.4 (Review Procedure). When a Site Plan is part of another application such as a Special Permit, as here, the approving agency for the Special Permit also approves the Site Plan (Zoning Ordinance Section 7.2). Any permission to develop and construct buildings and structures on most sites and in a majority of Zoning Districts in the City of White Plains requires Site Plan review and approval. Cell towers and antennas require Site Plan review and approval as part of the granting of Special Permit use. Defendant JOHN S. GARMENT is Chairman of the Planning Board of the City of White Plains, and STEPHEN A. ALEXANDER, JOHN E. DURANTE, CASIMIRO V. CIBELLI, ARNOLD BERNSTEIN, MICHAEL F. QUINN, and JOHN J. IORIS, are members thereof.

11. METROPCS New York, LLC is a foreign Limited Liability Company of the State of Delaware, active in the State of New York since its initial filing with the New York State Secretary of State on April 19, 2007. METROPCS is a Federal Communications Commission licensed provider of digital wireless personal communications services ("PCS Services").

**Factual Background**

4

12. On February 28, 2008, METROPCS, through its counsel, filed an application for a Special Permit and Site Plan approvals from the Planning Board to develop a communications facility consisting of antennas to be located on the rooftop of 30 Lake Street in the City of White Plains, with associated equipment located inside the roof penthouse. A copy of the Application (without exhibits) is attached hereto as Exhibit A. [All exhibits attached to this complaint are incorporated herein by reference in full text.]

13. The proposed antennas to be installed on the roof of 30 Lake Street, a multi-unit residential apartment house, will be located less than 500 feet from the Eastview Middle School, a public school at 350 Main Street in White Plains, New York. The antennas will also be directly opposite residential units in neighboring apartment houses, and directly above a public park frequented by local residents including the elderly and young parents with infants and pre-school toddlers.

14. On information and belief, a substantially identical application was filed by METROPCS for installation of wireless cell antennas on the rooftop of 90 Bryant Avenue, also a multi-unit residential apartment house in the City of White Plains.

15. The proposed antennas to be installed on the roof at 90 Bryant Avenue will be located directly across the street from the Mamaronack Avenue Elementary School, a public school on Nosband Avenue, White Plains, New York.

16. On April 15, 2008, Plaintiff STEPHEN DRAGO and about 50 members and supporters of "Neighborhoods Against Cell Towers," appeared at a public hearing on the proposed antenna installation at 30 Lake Street (Planning Board Agenda No. NY6054). Prior to the hearing, Plaintiff submitted through counsel objections to the METROPCS

5

application on the ground that it was "false and misleading." A copy of Plaintiff's written objections is attached hereto as Exhibit B.

17. Simultaneously, Plaintiff submitted substantial evidence in opposition to the Special Permit in a volume of exhibits consisting of scientific studies describing the adverse non-thermal biological environmental effects of wireless emissions. The index for these exhibits is attached as the last page of Exhibit B. Because they are voluminous, it is requested that these studies be deemed marked Exhibit C. This substantial evidence will be handed up to the Court for its examination at the appropriate stage of these proceedings or on request.

18. At the Planning Board hearing on April 15, 2008, Plaintiff also expressed his and the association's objections to METROPCS's proposal to install antennas on the rooftop of 90 Bryant Avenue (Agenda No. NY6056).

19. At the conclusion of the public hearing on April 15, 2008, the Planning Board adjourned both Special Permit applications to May 20, 2008.

20. On May 5, 2008, Plaintiff, through counsel, appeared before the Mayor and Common Council of the City of White Plains and presented a statement urging the City to oppose the placement of new cell antennas in close proximity to schools and residences, based on scientific studies showing that:

a) young children are at risk of potential long-term harm from cell tower radiation; and

b) many people whose bedrooms are close to cell towers have experienced adverse health effects.

21. Plaintiff urged the Mayor and Council to prohibit the issuance of new permits by the Planning Board for cell towers or antennas near schools or residential housing.

22. Plaintiff also urged the Mayor and Council to adopt regulations imposing a curfew on the hours of operation for existing White Plains cell towers and antennas located near schools and near hospitals, nursing homes and residential housing.

23. The Mayor summarily dismissed both suggestions, stating that he did not want any further lawsuits from telecom companies.

24. On May 20, 2008, the adjourned date for the Planning Board hearings on Agenda items NY6054 and NY6056, Plaintiff, through counsel, made a lengthy oral presentation in further opposition to both applications covering 30 Lake Street and 90 Bryant Avenue. Simultaneously, Plaintiff submitted a written statement through counsel, a copy of which is attached hereto as Exhibit D, annexing a copy of the statement by Plaintiff's counsel to the Mayor and Common Council on May 5, 2008 (identified herein as Exhibit E).

25. Plaintiff's statement of May 20, 2008 also submitted (by reference) the City's map showing and listing the locations of existing wireless cell antenna sites in the City of White Plains, a copy of which is attached hereto as Exhibit H.

26. The Planning Board once again adjourned the public hearing on both applications to June 17, 2008.

27. On June 17, 2008, the Planning Board approved the issuance of the requested Special Permits and Site Plan approvals to METROPCS for agenda items NY6054 (30 Lake Street) and NY6056 (90 Bryant Avenue). This action followed.

## PLAINTIFF'S STANDING

28.  The statute provides that the Court is empowered to grant relief to "any person adversely affected by any final action....inconsistent with this subparagraph."

29.  Plaintiff and the members of the citizen association he represents, many of whom live in 30 Lake Street where approved antennas will be installed, qualify as persons "adversely affected" both because of their status as voters, taxpayers and citizens of White Plains, and because of the potential risks of biological harm similar to those experienced by the subjects of scientific studies in the United Kingdom, Austria, Germany, France, Spain and the Netherlands (Exhibit C).  Plaintiff and his fellow association members also have standing as direct participants in the Planning Board's public hearing whose outcome was adverse to their personal and property interests.

## FIRST CLAIM FOR RELIEF

30.  Plaintiff asks the Court to enter judgment finding and declaring that under 47 U.S.C. §332(c)(7), in making decisions regarding the placement of personal wireless service facilities, a State or local government may --

(a)  require the placement of transmission antennas a reasonable distance away from schools and playgrounds;

(b)  require the placement of transmission antennas a reasonable distance from residences;

(c)  impose curfew hours limiting the operation of transmission antennas placed unreasonably near schools and playgrounds;

(d)  impose curfew hours limiting the operation of transmission antennas placed unreasonably near residences;

(e)  adopt and apply the Precautionary Principle as defined in the Benevento Resolution of 2006;

(f)  consider non-thermal biological environmental effects from RF emissions pending the FCC's adoption of research-based regulations concerning such effects; and

(g)  consider long-term cumulative environmental effects of RF emissions pending the FCC's adoption of research-based regulations concerning such effects.

31.  In addition to the permissive provisions of the Telecommunications Act, a State or local government must act reasonably in recognition of scientific studies relevant to Plaintiff's and other individuals' constitutional rights under the Fourth, Fifth, Ninth and Fourteenth Amendments to be safe and secure in their homes, which requires government to protect them from invasions of their homes and seizure of their persons by forces that may do them harm.

### SECOND CLAIM FOR RELIEF

32.  METROPCS failed to provide substantial evidence to the Planning Board establishing a public need for additional wireless service facilities either in the City of White Plains, or at these particular locations, as required under state law and by subparagraph (7)(B)(iii).

47 U.S.C. §332(c)(7)(B)(iii) provides:

(iii) Any decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record.

33. The Planning Board members failed to compile any written record containing substantial evidence to support the Board's granting of Special Permits and Site Plan approvals to METROPCS for these sites, in direct violation of the statute.

34. The Defendant members of the Planning Board also violated subparagraph (7)(A) of the statute by failing to investigate Plaintiff's claims in Exhibit B that the METROPCS application was false and misleading in material respects, thereby abusing their discretion and acting in an arbitrary and capricious manner.

### THIRD CLAIM FOR RELIEF

35. Subsection (A) of subparagraph (7) provides:

Except as provided in this paragraph, nothing in this chapter shall limit or affect the authority of a State or local government or instrumentality thereof over decisions regarding the placement, construction, and modification of personal wireless service facilities.

36. The Zoning Ordinance of the City of White Plains states that its purpose is to promote "the public health, safety and general welfare" (Section 1.3). The Planning Board, an instrumentality of local government flatly refused to entertain or consider any evidence or arguments relating to the placement of METROPCS wireless service facilities based on "the public health, safety and general welfare" of Plaintiff, members of the association, or the schoolchildren or occupants of the affected residential housing. Defendant GARMENT ruled repeatedly that the Planning Board was limited to consideration of questions of "aesthetics" alone.

37. The Defendant members of the Planning Board failed and refused to exercise their responsibility to protect the "the public health, safety and general welfare," and

violated subparagraph (7)(A) by not requiring the applicant to present alternate sites for placement of the antennas that would present lower potential for risks of harm to the schoolchildren and to occupants of the residential dwellings.  The Defendant members of the Planning Board also violated (7)(A) and the zoning ordinance by refusing and failing to discuss or consider the "Precautionary Principle" advocated in the Benevento Resolution ("Exhibit A" in Exhibit C).

## FOURTH CLAIM FOR RELIEF

38.  The Planning Board Defendants refused and failed to inquire into or consider to what "extent" FCC regulations concerning radio frequency emissions prohibit local government consideration of (1) non-thermal biological environmental effects of RF emissions, or (2) long-term and cumulative environmental effects of RF emissions on schoolchildren and occupants of residential housing. Such refusal and failure was inconsistent with subparagraph (7)(B)(iv).  Such refusal also constituted abuse of discretion and arbitrary and capricious action.

39.  47 U.S.C. §332(c)(7)(B)(iv) provides:

(iv) No State or local government or instrumentality thereof may regulate the placement, construction, and modification of personal wireless service facilities on the basis of the environmental effects of radio frequency emissions to the extent that such facilities comply with the Commission's regulations concerning such emissions.

40.  Defendant METROPCS waived any claim of preemption as to such consideration by asserting affirmatively in its Special Permit application that the proposed antennas will "benefit" public health, and by submitting a consultant's report in support of its application stating that "continuous exposure" is "completely safe."

11

Plaintiff should have been allowed an opportunity by the Planning Board Defendants to refute METROPCS's claims on the record. The Planning Board Defendants had an obligation to compile a full and fair record in support of the determination granting the Special Permits to METROPCS. The failure to include a discussion of Plaintiff's opposing evidence, especially Exhibit C, was inconsistent with both subparagraphs (iii) and (iv) and a violation of the Act. It also constitutes abuse of discretion; arbitrary and capricious action; denial of due process; and denial of equal protection.

41. Plaintiff has constitutional rights under the Fourth, Fifth, Ninth and Fourteenth Amendments to be safe and secure in his home, which requires government to protect him from invasions of his home and seizure of his person by forces that may do him harm.

## PRAYER FOR RELIEF

Plaintiff prays and requests the Court to:

A. Grant declaratory judgment interpreting and clarifying the Telecommunications Act and the responsibilities of state and local government as requested in the First Claim for Relief;

B. Enjoin and order the Planning Board Defendants and the City of White Plains to cancel the Special Permits and Site Plan approvals on Agenda items NY6054 (30 Lake Street) and NY6056 (90 Bryant Avenue) for each of the reasons set forth in the Second, Third and Fourth Claims for Relief;

C.  Direct and Order Defendant MetroPCS to cease operating and to dismantle and remove any antennas and other wireless transmission facilities and equipment from the premises at 30 Lake Street and 90 Bryant Avenue;

D.  Award Plaintiff his attorneys fees, costs and expenses in initiating and prosecuting this proceeding in the public interest pursuant to the Equal Access to Justice Act or other appropriate authority designed to encourage citizens to bring actions in the Courts to protect and vindicate citizen rights before administrative agencies; and

E.  Award Plaintiff such other, further and different relief as the Court may deem appropriate.

WHITNEY NORTH SEYMOUR, JR.
Federal Bar No. WS2019
425 Lexington Avenue, Room 1721
New York, NY   10017
Tel:  212-455-7640
Fax: 212-455-2502
Email:  wseymour@stblaw.com


GABRIEL NORTH SEYMOUR
Federal Bar No. GS6726
200 Route 126
Falls Village, CT   06031
860-824-1412
Email:  certiorari@earthlink.net

Attorneys for Plaintiffs

July 15, 2008

13

# TABLE OF EXHIBITS

**EXHIBIT A**   Application to the Planning Board of the City of White Plains by MetroPCS for a Special Permit and Site Plan for Communications Facility with Antennas to be located on the rooftop of 30 Lake Street in the City of White Plains.

**EXHIBIT B**   Plaintiff's Written Objections to the MetroPCS Application to the Planning Board of the City of White Plains for a Special Permit

**EXHIBIT C**   Plaintiff's Volume of Scientific Studies Submitted to the Planning Board of the City of White Plains with Plaintiff's Written Objections to the MetroPCS Application for Special Permit

**EXHIBIT D**   Plaintiff's Further Letter of Objection Submitted to the Planning Board of the City of White Plains, May 20, 2008.

**EXHIBIT E**   Statement by Plaintiff's Counsel to the Mayor and City Council of the City of White Plains, Dated May 5, 2008.

**EXHIBIT F**   Map of Existing Antenna Sites in the City of White Plains, submitted by Reference to the Planning Board of the City of White Plains, Dated May 20, 2008.

# CUDDY&
# FEDER LLP

145 Hamilton Avenue, 14th Floor
White Plains, New York 10601
Tel 914.761.1300  Fax 914.761.5372
www.cuddyfeder.com

DEPARTMENT OF PLANNING
RECEIVED
MAR 1 8 2008

RECEIVED
FEB 2 8 2008
CITY OF WHITE PLAINS
DEPT. OF BUILDINGS

February 28, 2008

**By Hand**
Chairman John S. Garment and
   Members of the Planning Board
City of White Plains
255 Main Street
White Plains, New York 10601

Re:   MetroPCS New York, LLC
      Wireless Telecommunications Facility (NY6054)
      Premises: 30 Lake Street, White Plains, New York
      <u>Tax Id.: Section 126.53, Block 5, Lot 1</u>

Dear Chairman Garment and Members of the Planning Board:

This letter is respectfully submitted on behalf of MetroPCS New York, LLC ("MetroPCS") in connection with the above-referenced application.

MetroPCS is a Federal Communications Commission ("FCC") licensed provider of next generation, digital wireless personal communications services ("PCS Services").

MetroPCS has entered into a lease agreement with Biltmore Towers Condominium Association, record owners of the subject Premises, and is hereby applying for Special Permit and Site Plan approvals from the Planning Board in order to develop a wireless telecommunications facility, consisting of antennas to be located on the rooftop of the existing building and associated unmanned equipment to be located inside the penthouse of the existing building located on the subject property in the City of White Plains, New York (the "Premises"). By locating its facility on the existing building on the Premises, MetroPCS seeks to provide wireless service to a substantial portion of the City that includes residences in the Lake Street area, travelers along Interstate 287, North Broadway and Westchester Avenue, and to surrounding local businesses and roads in the vicinity of the proposal.

**The Premises**

The Premises is an approximately 51,430 +/- square foot parcel of real property located on Lake Avenue. The Premises is classified in the RM-0.4 ("Residential Multi-Family") zoning district and is improved with a twelve (12) story condominium building and associated parking lot.

**ATTORNEYS AT LAW**  White Plains  Fishkill  New York City  Norwalk

C&P: 863054.1

EXHIBIT A

**MetroPCS's Proposed Wireless Facility**

MetroPCS's proposed wireless facility will consist of mounting seven (7) panel antennas at a centerline height of approximately one-hundred fourteen feet (114') above grade level ("AGL") on the rooftop of the existing building. The dimensions for each panel antenna are approximately fifty-four inches (54") long by six inches (6") wide by three inches (3") deep.

In addition, MetroPCS seeks to install its associated unmanned equipment necessary to operate its facility within a one-hundred sixty (160) square foot lease area, inside the penthouse on the existing building's rooftop. MetroPCS also proposes to mount one (1) Global Positioning Satellite ("GPS") antenna on the rooftop of the building at a height of approximately one hundred and fifteen feet (115') AGL. The GPS antenna will be used not only to operate the wireless facility, but also to enable MetroPCS to comply with the FCC's regulations governing the implementation of wireless Enhanced 911 Phase II automatic location identification. These improvements are detailed on the site plans accompanying this application, prepared by Dewberry-Goodkind, Inc., dated January 21, 2008, revised through February 4, 2008 "Site Plans").

It is respectfully submitted that, as demonstrated by the site plans and other materials submitted in support of this application, MetroPCS's proposed location of a wireless facility on the Premises will have a *de minimis* impact on the surrounding neighborhood.

**MetroPCS's FCC License**

MetroPCS is licensed by the Federal Communications Commission ("FCC") to provide digital wireless telephone services throughout the State of New York, including Westchester County. MetroPCS's Advanced Wireless Service ("AWS") FCC license requires it to complete the construction and build-out of its wireless network in its federally licensed service areas, including the City of White Plains. There is a public need for wireless telecommunication services, as evidenced by the granting of a license to MetroPCS by the FCC. This grant constitutes a finding that the public interest will be served by MetroPCS's services and is consistent with the public policy of the United States "to make available so far as possible, to all people of the United States ... a rapid, efficient, nationwide and worldwide wire and radio communication service with adequate facilities at reasonable charges, for the purpose of national defense, for the purpose of promoting safety of life and property through the use of wire and radio communication." 47 U.S.C. § 151.

MetroPCS is a new entrant into the wireless market in this area, with no other existing sites in and around the City of White Plains. Currently, MetroPCS does not have any wireless infrastructure to provide service in this portion of the City, particularly in the area along Lake Street, Interstate 287, North Broadway and Westchester Avenue and the surrounding local roads in the vicinity of the proposal. See Radio Frequency Affidavit annexed hereto as Exhibit C. The proposed Facility will allow MetroPCS to provide reliable service to its customers living in and traveling through this area of the City of White Plains, thereby complying with its FCC licensing requirements as well as other FCC rules and regulations governing wireless facilities. Moreover,

**CUDDY &**
**FEDER** LLP

by locating its Facility on the rooftop of the existing building, MetroPCS can fulfill its FCC licensing obligations while obviating the need to build a new tower in this area of the City.

## Conformance with the City of White Plains Zoning Ordinance and the Telecommunications Act of 1996

The City of White Plains Zoning Ordinance (the "Zoning Ordinance") classifies the Premises in the RM-0.4 ("Residential Multi-Family") zoning district where a Public Utility Facility is permitted subject to the issuance of Special Permit and Site Plan approvals by the Planning Board. The Planning Board has previously determined that wireless telecommunication facilities, such as the one proposed by MetroPCS, constitute public utility facilities.

MetroPCS respectfully submits that its proposed public utility facility complies with the conditions for the granting of the special permit and site plan approvals and conforms to the purpose and intent of the Zoning Ordinance. It is also respectfully submitted that approval of MetroPCS's public utility facility is consistent with the procedural and substantive requirements set forth in Section 704 of the Telecommunications Act of 1996.

MetroPCS's proposed Facility will not generate additional traffic as it is unmanned and requires maintenance visits by a service technician approximately once or twice a month, generally lasting for an hour. During these infrequent visits the technician will use the existing access and on-site parking. In addition to these maintenance visits, the Facility will be monitored by MetroPCS 24 hours a day, 7 days a week from a remote location. Therefore, the proposed Facility will have no impact on pedestrian or vehicular traffic.

Further, MetroPCS's proposed Facility will not produce any discernable smoke, gas, odors, heat, vibrations or noise. No water or sewage disposal will be associated with the Facility. Further, the proposed Facility will not result in additional storm water runoff, nor does it require any outdoor lighting improvements. No commercial signs or lighting is proposed by MetroPCS.

In addition, MetroPCS has submitted with this application an Antenna Site FCC Radio Frequency Compliance Assessment and Report, prepared by Pinnacle Telecom Group, dated January 28, 2008, in order to certify that the radio frequency emissions associated with this wireless facility will not exceed federal or state regulations. See Radio Frequency Compliance Assessment and Report attached hereto as Exhibit D.

MetroPCS has also provided certification by a New York State licensed Professional Engineer from Dewberry-Goodkind, dated January 30, 2008 that the existing building has the structural capacity to support MetroPCS's proposed Facility. See Structural Letter annexed hereto as Exhibit E.

Based on the materials submitted herewith, MetroPCS respectfully submits that its proposed wireless facility will be unobtrusive and will have a minimal impact, if any, on the existing character of the surrounding neighborhood. Further, it is respectfully submitted that by

CUDDY&
FEDER LLP

providing the safety of enhanced wireless communications, MetroPCS's proposed Facility will
benefit the public health, safety, and general welfare.

## Materials Submitted in Support of MetroPCS's Application

Accordingly, in support of MetroPCS's application, please find enclosed twenty five (25)
copies of the instant cover letter bound to the following exhibits:

Exhibit A:     City of White Plains Application for Building Permit Form;

Exhibit B:     Cover and signature pages of the lease agreement between MetroPCS and
               the property owner, Biltmore Towers Condominium Association;

Exhibit C:     Radio Frequency Affidavit prepared by Gregory Sharpe, a Radio
               Frequency Engineer, dated January 29, 2008, with the following sub-
               exhibits:

    Exhibit (1):     Copy of MetroPCS's FCC Licenses.

    Exhibit (2):     Signal Propagation Map demonstrating that MetroPCS
                                currently has no existing service in and adjacent to this area
                                of the City.

    Exhibit (3):     Signal Propagation Map depicting MetroPCS's existing
                                service in and adjacent to this area of the City with service
                                from the proposed Facility.

    Exhibit (4):     Signal Propagation Map depicting MetroPCS's proposed
                                coverage in and adjacent to the City from the proposed
                                Facility as well as coverage from other planned future sites.

Exhibit D:     Radio Frequency Compliance and Assessment and Report prepared by
               Daniel J. Collins, Radio Frequency Engineer, dated January 28, 2008
               certifying that the proposed facility complies with all applicable emissions
               standards promulgated by Federal and State law;

Exhibit E:     Structural letter, by a licensed Professional Engineer with Dewberry-
               Goodkind, Inc., dated January 30, 2008 certifying that the existing
               building has the structural capacity to support MetroPCS's proposed
               installation;

Exhibit F:     Short Environmental Assessment Form prepared in accordance with
               Article 8 of the New York State Environmental Conservation Law and the
               rules and regulations promulgated thereunder at 6 N.Y.C.R.R. Part 617
               ("SEQRA"); and

Exhibit G:     Mandate of the Telecommunications Act of 1996.

**CUDDY**&
**FEDER**LLP

Exhibit H:     Photosimulations depicting the Premises as it exists today and as it would look after the installation of MetroPCS's proposed facility, demonstrating the lack of visual impact.

Additionally, enclosed please find twenty-five (25) sets of signed and sealed Site Plans, prepared by Dewberry-Goodkind, Inc., consisting of sheets T-1 and Z-1 through Z-4, dated January 21, 2008, revised through February 4, 2008.  Also enclosed is a check made payable to the City of White Plains in the amount of one-hundred dollars ($100.00), representing the special permit/site plan application filing fee.

**Conclusion**

It is respectfully submitted that approval of the instant application is warranted based on the foregoing materials that demonstrate that MetroPCS's proposed wireless facility fully complies with the Special Use Permit and Site Plan criteria.  MetroPCS's proposed Facility also constitutes the least intrusive means available for filing its gap in wireless service.

MetroPCS looks forward to appearing before the Planning Board and respectfully requests that this application be placed on the next available agenda for discussion.  Should the Planning Board or City Staff have any questions or comments in the interim, please feel free to contact me.  Thank you in advance for your cooperation and consideration in this matter.

Very truly yours,

Christopher B. Fisher

CBF/cs
Enclosures
cc:    Michelle Eisenmenger, MetroPCS (w/enclosures)
       Amy English, HPC Development (w/out enclosures)
       Vincent Xavier, HPC Developmet (w/out enclosures)
       Chris Daddi, Dewberry-Goodkind, Inc. (w/out enclosures)
       Gregory Sharpe, RF Engineer (w/out enclosures)

**WHITNEY NORTH SEYMOUR, JR.,**
425 Lexington Avenue, Room 1721
New York, NY  10017
Tel:  212-455-7640, Fax:  212-455-2502
wseymour@stblaw.com

Chairman John S. Garment and                                  April 15, 2008
Members of the Planning Board
City of White Plains
255 Main Street
White Plains, NY  10601

                              RE:  MetroPCS New York, LLC
                                   Wireless Telecommunications Facility
                                   (NY6054) Premises:  30 Lake Street, White
                                   Plains, New York; Tax Id.:  Section 126.53,
                                   Block 5, Lot 1

Dear Chairman Garment and Members of the Planning Board:

        This letter is respectfully submitted on behalf of a White Plains community civic
organization ("Neighbors Against Cell Towers" – NACT) in opposition to the above-
referenced application.  Members of NACT include a number of long-time residents of
the subject premises at 30 Lake Street in White Plains.

        NACT disputes and challenges as false and misleading the following material
claims made by MetroPCS in its submission dated February 28, 2008:

**Misrepresentation No. 1: "Metro PCS's proposed location of a wireless facility on
the Premises will have a _de minimus_ impact on the surrounding neighborhood."**

        The described function of the proposed MetroPCS facility is to receive and
transmit RF signals from various mobile devices, and then to provide "substantial
coverage" of those RF emissions to the surrounding area.  The applicant's description of
the surrounding area is "high density homes as well as commercial buildings." (Exhibit
C – Sharpe affidavit).  The application makes no mention of the fact that the immediate
area includes the Eastview Middle School less than 500 feet in a direct line from the
proposed MetroPCS facility.

        The school has a daily student population of about 200 pre-Kindergarten students
(age 4 years) and 450 to 500 6th to 8th graders (age 11 to 14).  There is also a
"Newcomers" second language program for additional young students at the school.
These are among the most vulnerable formative ages of children in their growing years
when they are susceptible to outside forces that can affect their health over their full
lifetimes.



Many of the Eastview Middle School students travel along streets and sidewalks on their daily trips to and from school directly below the proposed MetroPCS antennas.

The applicant does not describe any special measures to achieve a "*de minimus*" impact on these school-age children or on the residents of 30 Lake Street or surrounding residential buildings, including senior citizens and persons in poor health.

The scientifically accepted and recommended way to reduce the impact of RF radiation is by application of the "Precautionary Principle" described and discussed in the attached evidentiary Exhibits 1 and 2. The Precautionary Principle should be adopted as the policy of the City of White Plains to minimize human exposure to RF radiation, and to protect all young schoolchildren by keeping RF transmitters as far away from schools as possible, while still maintaining basic cell phone coverage.

Submitted herewith as Exhibit 3 is an Amicus Curiae brief filed in the United States Supreme Court by the non-profit Healthy Schools Network, describing some of the health concerns for young students exposed to RF radiation, with citations to relevant scientific studies.

There is no evidence in the record that MetroPCS intends to take any special steps to protect the residents of 30 Lake Street, particularly those residing on the upper floors and those using the roof terraces, from the risks of close proximity to the antennas and transmitter proposed to be installed on the roof of the building.

In short, there is no evidence whatsoever in the description of the proposed antenna installations that MetroPCS has made any effort at all to achieve a "de minimus impact" on the nearby residents, or the students, teachers and parents of the Eastview Middle School. MetroPCS's application should be rejected on this ground alone.

**Misrepresentation No. 2: "There is a public need for wireless telecommunication services, as evidenced by the granting of a license to MetroPCS by the FCC."**

The MetroPCS application and letter of February 28, 2008, does not satisfy the statutory requirement of "public necessity" for the proposed facility. It attempts to mislead the Board into believing that because it has paid a fee and obtained a routine license from the FCC that the FCC has actually investigated and approved the proposed 30 Lake Street wireless telecommunications facility. An examination of the license will show that this is plainly not true. The Second Circuit U.S. Court of Appeals has held that to meet the "public necessity" requirement for a new telecommunications installation:

The applicable standard was articulated by the New York Court of Appeals in Consolidated Edison Co. v. Hoffman, which concerns the showing that a utility

2

must make under New York law before a zoning board may grant a use variance. 43 N.Y.2d 598, 611, 403 N.Y.S.2d 193, 374 N.E.2d 105 (1978); see also Cellular Tel. Co. v. Rosenberg, 82 N.Y.2d 364, 371, 604 N.Y.S.2d 895, 624 N.E.2d 990 (1993) (applying the Consolidated Edison test to cell phone company's application to build a new cell site).

Under the Consolidated Edison 'public necessity standard, a utility must show that (1) its new construction 'is a public necessity in that it is required to render safe and adequate service', and (2) 'there are compelling reasons, economic or otherwise, which make it more feasible" to build a new facility than to use 'alternative sources of power such as may be provided by other facilities.' Id. at 371-72, 604 N.Y.S. 2d 895, 624 N.E.2d 990"

> Omnipoint Communications, Inc. v. City of
> White Plains, 43 F.3d 529 (2d Cir. 2005)
> (Emphasis added.)

MetroPCS has made no attempt to satisfy these basic legal requirements, and we submit that the Board therefore may not issue the requested Special Permit as a matter of law.

Furthermore, there is ground to believe that adding additional frequencies to the RF radiation bombarding schoolchildren will increase the risk of harm to those children, caused by resonation of RF signals within body organs and human cells. The Precautionary Principle argues against creating such additional exposure and risk.

## Misrepresentation No. 3: "MetroPCS's proposed Facility will benefit the public health, safety and general welfare."

Promoting public health, safety and general welfare is one of the basic purposes of the White Plains Zoning Ordinance (Section 1.3). MetroPCS's claim that the proposed Facility will "benefit" the public health is wholly unsupported and is refuted by countless scientific studies of RF radiation hazards from all around the world. A sampling of studies indicating adverse effects on human health from RF transmitters will be found in the accompanying NACT Exhibits that constitute substantial evidence that RF transmitters ["base stations"] have repeatedly been found to have an adverse effect on public health.

It should be particularly noted that the applicant has submitted (as Exhibit D) an "Antenna Site FCC RF Compliance Assessment and Report" prepared by an outside consultant that contains the following statement in its "Compliance Conclusion":

> The FCC MPE limit has been constructed in such a manner that continuous human exposure to RF fields up to and including 100 percent of the MPE limit is acceptable and completely safe.

(Emphasis added.)

This is a wholly misleading claim. What the consultant is talking about is the absence of harmful thermal effects from FCC approved power levels for RF emissions, not the low-power RF emissions that produce harmful non-thermal biological effects in human beings. As demonstrated by every one of NACT Exhibits 1-9, there is substantial scientific evidence from experts around the world that low-power RF radiation produces potentially harmful non-thermal health effects, including suspected cases of cancer. None of these effects is presently addressed by the FCC safety standards. The applicant's misuse of the paid consultant's statement claiming these antennas are "completely safe", together with the applicant's unqualified claim that the facility will "benefit public health" are demonstrably misleading and improper.

**Misrepresentation No. 4: "Mandate of the Telecommunications Act of 1996."**

The purported description of the Telecommunications Act of 1996 submitted with the application letter of February 28, 2008, contains a major misstatement of the language of the law. The applicant's summary states:

> (4) local regulations may not regulate the placement, construction or modification of personal wireless service facilities on the basis of the "environmental effects of radio frequency emissions" so long as the facilities meet standards set by the FCC.

(Emphasis added.)

The actual wording of the law, 47 USC § 332(c)(7)(B) is this:

> (iv) No State or local government or instrumentality thereof may regulate the placement, construction, and modification of personal wireless service facilities on the basis of the environmental effects of radio frequency emissions to the extent that such facilities comply with the Commission's regulations concerning such emissions.

(Emphasis added.)

The difference between "so long as" and "to the extent that" is of major significance to this application.

The proposed facility will not meet any FCC regulations for non-thermal effects, because no FCC non-thermal safety standards exist.

"To the extent that" the FCC regulations are complied with, it is true that the Board cannot consider thermal environmental effects of the radio frequency emissions. That is not the issue NACT is raising here. Here the issue is the non-thermal effects on children and adults who will be subjected to continuous and long-term exposure to the RF emissions from the proposed facility. Despite efforts to persuade the FCC to expand its

4

regulations to cover non-thermal effects, the agency has refused to do so – leaving the field unregulated.  These non-thermal environmental effects of radio frequency emissions are not covered by any FCC regulation.  See <u>EMR Network v. FCC</u>, 391 F.3d 269 (D.C. Cir. 2004).

The City of White Plains has both an opportunity and an obligation to protect its residents from the potential harm from non-thermal effects of radio frequency emissions demonstrated by substantial evidence contained in the recent scientific studies described in NACT Exhibits 1-9.  A strong case exists that these considerations cannot be preempted by Federal law.

## <u>CONCLUSION</u>

The MetroPCS application for issuance of a Special Permit and for approval of its Site Plan under the City of White Plains Zoning Ordinance must be denied based on the substantial evidence in the hearing record of potentially harmful effects—particularly on schoolchildren---and the false and misleading statements contained in the applicant's letter of February 28, 2008.

Respectfully submitted,

Whitney North Seymour, Jr.

Attachments:

Exhibit Index and
NACT Exhibits 1 to 9.
(in separate binder)

C

# **Exhibit Index**

**Ex. 1   Benevento Resolution (2006)**

**Ex. 2   BioInitiative Report, Section 17 (2007)**

**Ex. 3   Healthy Schools Network Amicus Brief  (2006)**

**Ex. 4   UK Health Study Summary  (2007)**

**Ex. 5   AUSTRIA Health Study  (2006)**

**Ex. 6   GERMANY Health Study  (2005)**

**Ex. 7   FRANCE Health Study  (2003)**

**Ex. 8   SPAIN Health Study  (2003)**

**Ex. 9   NETHERLANDS Health Study  (2003)**



WHITNEY NORTH SEYMOUR, JR.,
425 Lexington Avenue, Room 1721
New York, NY   10017
Tel:  212-455-7640, Fax:  212-455-2502
wseymour@stblaw.com

Chairman John S. Garment and                    For Hearing on:
Members of the Planning Board                        May 20, 2008
City of White Plains
255 Main Street
White Plains, NY   10601

RE:  MetroPCS New York, LLC
Wireless Telecommunications Facility
(NY6054) Premises:  30 Lake Street, White
Plains, New York; Tax Id.:  Section 126.53,
Block 5, Lot 1
also
(NY6056) Premises: 90 Bryant Avenue

Dear Chairman Garment and Members of the Planning Board:

This letter is respectfully submitted on behalf of a White Plains community civic organization ("Neighborhoods Against Cell Towers"  N-ACT) in opposition to the above-referenced application, and supplementing our earlier letter of April 15, 2008 and volume of exhibits.  Members of N-ACT include a number of long-time residents of the subject premises at 30 Lake Street in White Plains and other residential buildings in the neighborhood, who  also are White Plains taxpayers.

These citizens oppose the granting of permits to install cell antennas at 90 Bryant Avenue on identical grounds.  Both applications are presently on your calendar for May 20, 2008.

The citizens' grievances and concerns were expressde on May 5, 2008 at an Open Forum before the Mayor and City Council. The citizens' group pointed out that the City is already saturated with cell phone coverage, and urged the Mayor and City Council to reject any new antenna applications near schools and residential housing.

At the Open Forum, the citizens also proposed a curfew on hours of operation of existing towers and antennas near schools and residential housing, and submitted a memorandum providing the scientific basis to support such a zoning change (attached).

The Mayor arbitrarily rejected both proposals without discussion, stating that he did not want further lawsuits from telecom companies.



Attached is a map and list of present cell towers and antennas in the City of White Plains, along with a copy of the group's May 5, 2008 statement.

We urge the members of this Board to exercise their independent judgment in the public's interest and to deny these applications because (1) the antennas are not needed to fill gaps in service, and (2) they will emit radio frequency radiation that poses unnecessary risks to children and residents living in the area.

Until the telecom industry accepts its own responsibility to provide scientific proof that cumulative non-thermal effects of continuous cell antenna emissions are absolutely harmless, all applications for unneeded and untested facilities should be rejected. The substantial evidence supplied by N-ACT to the Planning Board of the City of White Plains fully supports this result.

As discussed in our prior letter of April 15, 2008, the City of White Plains therefore has both an opportunity and an obligation to protect its residents from the non-thermal effects of radio frequency emissions demonstrated by the substantial evidence in the reports and scientific studies described in Exhibits 1-9.

### The City's Present Policy of Siting Cell Towers and Antennas based on Fear of Litigation is Arbitrary and Capricious, an Abuse of Discretion, and a Denial of Due Process to Children, Their Parents, and Local Residents

At the Planning Board's April 15 public hearing on the MetroPCS application to install cell antennas at 30 Lake Street, we submitted a letter brief and a volume of exhibits in support of the citizens' opposition to that application.

The Chair of the Planning Board initially stated that the Board's sole responsibility was to determine issues of "aesthetics." After the citizens argued that the Board had responsibility to consider all relevant issues relating to the granting or denial of a special permit under the City's Zoning Ordinance, including public health, safety and welfare, the Board adjourned the MetroPCS application to May 20, 2008, and referred questions raised by the citizens and the applicant during the hearing to the Corporation Counsel.

A few days later, the undersigned telephoned the Assistant Corporation Counsel assigned to the matter, Arthur Gutekunst, Esq., and requested an opportunity to explain to him the citizens' position and arguments on the legal issues. Mr. Gutekunst refused to discuss any aspect of the matter, and hung up.

The undersigned then telephoned the office of the Corporation Counsel, Hon. Edward Dunphy, and requested an appointment to meet with him in person to present the grounds for the citizens' opposition to the MetroPCS application. On April 22, 2008, Mr. Gutekunst telephoned my office and left the following voicemail message:

"I discussed your request with Mr. Dunphy and he asked me to convey to you that neither I nor he would be meeting with you on Thursday concerning 30 Lake Street."

This "know-nothing" arbitrary refusal to consider important questions affecting the welfare of citizens of White Plains was echoed on May 5 in the Mayor's refusal to consider the citizens' proposal for a change in the Zoning Ordinance, based on his expressde fear of lawsuits from the telecom industry.

The refusal by these City officials to hear or consider legal and factual arguments from a responsible group of citizens and taxpayers in opposition to the siting and operation of cell antennas in close proximity to schools and residential housing is unreasonable and irresponsible and an abuse of discretion. Any granting of special permits allowing the installation of cell antennas close to schools and residential housing at 30 Lake Street, 90 Bryant Avenue, or at other similar locations in White Plains, would be arbitrary and capricious, an abuse of discretion, and contrary to the substantial scientific evidence submitted on April 15. In addition, granting such permits after the flat refusal of the City's Law Department to hear or consider the citizens' evidence and legal arguments constitutes a denial of constitutional due process as well as the citizens' First Amendment right of access on an issue directly affecting their life, liberty and property interests.

The MetroPCS applications seeking approval of its Site Plans and issuance of Special Permits under the City of White Plains Zoning Ordinance for 30 Lake Street and 90 Bryant Avenue must be denied based on the substantial evidence in the record together with the misleading statements in the applicant's letter on February 28, 2008.

On the substantial evidence in the record, combined with the demonstration of the closed minds of the City's top officials, these citizens respectfully request the Planning Board of the City of White Plains to decide independently to:

A. Recommend an amendment to the City's zoning ordinance and regulations:

1. To deny all future permits for the installation and operation of any cell towers or cell antennas within 1500 feet (or other reasonable distance) of a school.

2. To deny all future permits within 1500 feet (or other reasonable distance) of a hospital, nursing home or residential housing.

3. To impose a curfew during school hours on the operation of any existing cell tower or cell antennas within 1500 feet (or other reasonable distance) of a school.

4. To impose a curfew on the operation of any existing cell tower or cell antennas within 1500 feet (or other reasonable distance) of a hospital, nursing home or residential housing during normal nighttime sleeping hours.

3

B. Declare a moratorium on the granting of any new permits for the installation and operation of any cell towers or cell antennas in the City of White Plains until a court of competent jurisdiction determines whether a municipality is required under Federal Law to allow additional wireless services when a municipality is already fully covered by wireless services supplied by existing providers; and

C. Deny the Pending MetroPCS applications to install and operate cell antennas at 30 Lake Street and 90 Bryant Avenue under the principles of the Benevento Resolution (Exhibit 1 in the bound exhibits before the Planning Board) because of their close proximity to the Eastview Middle School and the Mamaroneck Avenue School.

## CONCLUSION

The MetroPCS applications for issuance of Special Permits and approval of its Site Plans for 30 Lake Street and 90 Bryant Street should be denied on the merits, on the substantial evidentiary record before the Board, combined with the misleading statements in the applicant's letter of February 28, 2008 (and of January 31, 2008).

Based on the evidence submitted on April 15 and again today, these White Plains citizens respectfully also request the Planning Board of the City of White Plains to adopt the actions described in A, B, and C above.

Respectfully submitted,

Whitney North Seymour, Jr.

Attachments:

Map of Existing Antenna Sites (Separately)
Statement of May 5, 2008

4

**Statement by Whitney North Seymour, Jr.**
**White Plains Open Forum, May 5, 2008**

## PROTECTING THE CITIZENS OF WHITE PLAINS
## FROM CELL TOWER RADIATION

The Founding Fathers of this country recognized the duty of every state and local government to protect the health, safety and welfare of its citizens. They embodied this obligation in the Tenth Amendment to the Constitution. In White Plains, the Birthplace of the State of New York, this principle is set forth in the City's Zoning Ordinance, whose stated purpose is:

"...to promote the public health, safety and general welfare...."

Officials of White Plains need to perform this Constitutional duty to protect the Health, Safety and Welfare of the citizens of White Plains from excessive cell tower radiation. Some City officials mistakenly believe that under Federal law the City is required to approve any and all cell tower and antenna applications wherever a telecommunications company wants to put them. This is wrong-headed and irresponsible thinking. It violates the rights of the citizens of White Plains and the principles of our Constitution.

The leading U.S. Court of Appeals cell tower decision explicitly states:

"State and local governments are not required to approve or prohibit anything. The only onus placed on state and local governments exercising their local power is that they may not regulate personal wireless service facilities that conform to the FCC Guidelines on the basis of environmental effects of RF radiation." [Cellular Phone Taskforce v. FCC, 205 F.3d 82, 96 (2d Cir. 2000)]

Congressional law also says the City may not unreasonably discriminate between providers or entirely prohibit all wireless services. These limitations do not present a problem for White Plains today. There is already full cell phone coverage for the entire City, and every provider has been treated reasonably and fairly on a first-come basis. The City is now fully saturated with cell phone service.



Meanwhile, there are more and more studies coming out around the world reporting that:

1. Young children are at risk of potential long-term harm from cell tower radiation; and

2. Many people whose bedrooms are close to cell towers have experienced adverse health effects.

Neither one of these environmental effects is covered by FCC Guidelines.

White Plains now has a unique opportunity to provide national leadership in protecting the health, safety and welfare of its citizens by adopting what scientists call the "Precautionary Principle." This means that new permits should not be issued by the Planning Board for cell towers or antennas near schools or residential housing. It also means imposing a curfew on hours of operation for all existing White Plains cell towers and antennas located near schools and near hospitals, nursing homes and residential housing.

A curfew ordinance requiring operators of cell towers and antennas within 1500 feet of any school to suspend cell transmissions between the hours of 8 AM and 4 PM on days when school is in session would be entirely reasonable and would comply with the City's Constitutional duty. So would a curfew requiring operators to suspend cell transmissions within 1500 feet of any hospital, nursing home or residential housing between the hours of 10 PM and 6 AM at night.

These reasonable limitations, based on substantial scientific evidence, will not unreasonably reduce the public's use of cell phones, while they will help to protect the health, safety and welfare of the people of White Plains. We urge the Council and Mayor to act on this proposal as soon as possible. It is time to stop playing Russian Roulette with the health of the children and other citizens of this City.

# # #

2

**WORKING
DRAFT**

## City of White Plains

### Cell Tower Radiation Curfew Ordinance

A Proposal to Limit Hours of Operation of Wireless Transmission Equipment
and Antennas in Close Proximity to Schools, Hospitals, Nursing Homes
and Residential Housing

---

Section_____ of the Zoning Ordinance of the City of White Plains is hereby

amended by adding the following subparagraphs:

(a) No person shall operate cell towers or antennas within 1500 feet of any public or
private school between the hours of 8 a.m. and 4 p.m. on days when school is in session.

(b) No person shall operate cell towers or antennas within 1500 feet of any hospital,
nursing home, or residential housing between the hours of 10 p.m. and 6 a.m. daily.

## Memorandum in Support of Cell Tower Radiation Curfew Ordinance

This bill is intended to protect the health, safety and welfare of the citizens of White Plains against unreasonable risk of potential adverse effects from cell tower transmissions during the hours of greatest vulnerability.

International scientific studies have identified a number of adverse physical, neurological and psychiatric effects associated with long-term exposure of persons to cell tower radiation.

In the United Kingdom, high incidences of cancer, brain hemorrhages and high blood pressure have been found among people living within 1,400 feet of cell phone towers. [The Sunday Times, April 22, 2007].

In Germany, doctors have found that patients experience one or more of the following symptoms after spending long periods of time within 1,400 feet of low voltage wireless transmitters (cell towers):

Sleep disturbances, tiredness, disturbance in concentration, forgetfulness, problem with finding words, depressive mood, ear noises, sudden loss of hearing, hearing loss, giddiness, nose bleeds, visual disturbances, frequent infections, sinusitis, joint and limb pains, nerve and soft tissue pains, feeling of numbness, heart rhythm disturbances, increased blood pressure episodes, hormonal disturbances, night-time sweats, nausea.

[Letter from German doctors to Prime Minister of Bavaria, July 22, 2005]

In Spain, researchers at the University of Valencia have found similar symptoms in persons spending six or more hours exposed to low levels of RF radiation within 900 feet of wireless base stations (cell towers).

\*   \*   \*

Until the telecommunications industry establishes convincingly that the foregoing symptoms are not the result of cell tower emissions and that such emissions do not produce adverse health effects, the City of White Plains should adopt a Precautionary Principle of protecting school children and also adults by limiting the hours of nearby cell tower operation when children are in school and when people are sleeping.

Children are more vulnerable than adults because (1) they have thinner skulls and other protective mechanisms; (2) they are undergoing the process of growth and development; and (3) they have more years ahead of them for cumulative effects to take hold.

These curfew limitations will not unreasonably limit the use of cell phones by people during the normal hours of greatest demand, while they will materially benefit the health, safety and welfare of the people of this City.

The bill will have no fiscal implications for the City budget.



CELLULAR ANTENNA
LOCATIONS

● SINGLE INSTALATIONS

◉ SITES OF CO-LOCATION

April 15,2008

EXHIBIT F

## CELLULAR ANTENNA LOCATIONS IN WHITE PLAINS

### Sprint Spectrum
| | |
|---|---|
| 201-00 | 70 Ferris Avenue |
| * | 44 South Broadway |
| 243-01 | 709 Westchester Avenue |
| 207-02 | Orchard Street and Reservoir Road |
| 241-02 | 125 Westchester Avenue - The Westchester |
| 229-03 | 59-65 Old Mamaroneck Road |
| 244-03 | 333 West Post Road |

### Nextel of NY
| | |
|---|---|
| 256-99 | Orchard Street and Reservoir Road |
| 225-00 | 305 North Street - St. Agnes Hospital smokestack |
| * | 1 North Broadway |
| ** | 121 Westmoreland Avenue |
| 251-00 | 59-65 Old Mamaroneck Road |
| 252-00 | 70 Ferris Avenue |
| 201-01 | 1131 North Street |
| 230-01 | 125 Lake Street |
| 255-01 | 149 Mamaroneck Avenue |
| 213-02 | 200 Hamilton Avenue |
| 230-02 | 78 North Broadway - Pace University |
| 239-02 | 77 South Lexington |
| 237-02 | 1 South Broadway |
| 240-02 | 34 South Broadway |
| 217-04 | 12 Tibbits Avenue |

### Omnipoint Communications
| | |
|---|---|
| 266-97 | 311 North Street - St. Agnes Hospital - amended by 215-02 |
| 223-98 | 709 Westchester Avenue |
| 224-98 | 199 Main Street - amended by 242-01 |
| 225-98 | 155 Ferris Avenue |
| 237-98 | Orchard Street and Reservoir Road |
| 214-99 | 18-20 Chestnut Hill Avenue |
| 236-02 | 185 Maple Avenue |
| 228-03 | 125 Lake Street |
| 216-04 | 10 Bank Street |
| 225-04 | 89 Bloomingdale Road |
| 207-05 | 90 Bryant Avenue |
| 221-05 | 250 Mamaroneck Ave YMCA |

### Bell Atlantic Mobile - Verizon
| | |
|---|---|
| 215-98 | 1131 North Street |
| 233-03 | 1 North Broadway |
| 255-94 | Orchard Street and Reservoir Road |
| 250-00 | 185 Maple Avenue |
| 218-01 | 19 Old Mamaroneck Road |
| 216-02 | 305 North Street - St. Agnes Hospital |
| 209-03 | 70 Ferris Avenue |

**AT&T Wireless Services**

| | |
|---|---|
| 267-97 | 78 North Broadway - Pace University - amended by 232-02 |
| 270-97 | 101 Old Mamaroneck Road - amended by 206-02 |
| 271-97 | 155 Ferris Avenue - amended by 202-02 |
| 201-02 | 125 Westchester Avenue -The Westchester |
| 204-04 | 950 Mamaroneck Avenue |
| 210-04 | Orchard Street and Reservoir Road |
| 211-04 | 456 North Street |
| 239-04 | 125 Lake Street |
| 240-04 | 235 South Lexington Ave |
| 241-04 | 311 North Street |

\*      Approved before the Planning Board claimed jurisdiction over antenna applications.  It is possible that the Building Department approved additional carriers at: 1 North Broadway, 199 Main Street, and 44 South Broadway, prior to 1997.

\*\*    Site is in the LI district, in which public utilities are a permitted use.